Good morning. My name is Charles Kagey, speaking on behalf of the plaintiffs. This is an antitrust case, and there's a lot of briefing on substantive antitrust issues, but I think there's a threshold issue that must be dealt with first, and that's the purely procedural question of pleading. And in particular, the trial court's most glaring error, which was refusal to allow plaintiffs to amend their complaint once certain problems had been identified with it. There is apparently a notion behind what the district court did. The plaintiffs had multiple chances to amend, had not sufficiently pleaded their complaint, and therefore should be out of court. But the actual chronology of facts shows quite a different story. The original complaint was filed in 1998, and it was basically the same complaint as in the state court Aguilar case. It alleged a conspiracy among defendants to enter into certain restrictive exchange agreements. It came up to 2002, after the Aguilar decision, there was a summary judgment pending to knock that out on issue preclusion grounds. At the same time, plaintiffs moved to amend the complaint, hoping to solve the problems, and put before the court a proposed amended complaint, and we find this at SER 93 in the record. At the hearing, the court discussed that and said, I find that proposed pleading inadequate for the same reason I have a problem with the original complaint, which is that it's still alleging a conspiracy among defendants to enter into exchange agreements, and we don't want to have that. So the court then said, I will give plaintiffs a chance to put in another proposed complaint. It gets rid of that problem, and then I'll decide whether to allow an amendment. So plaintiffs then filed their second proposed amended complaint, and this we find at ER 107. In this complaint, the court didn't indicate that it had any problems with it. This is what's discussed in the summary judgment decision at ER 112, and the court finds that plaintiffs have now indeed pleaded with greater particularity the anti-competitive effects of the exchange agreements, and gave them express leave to go ahead and to file that complaint. They then filed the first amended complaint at ER 114, and there are some editorial differences between that and the second proposal, but basically, subsequently, it's the same. This is the complaint the court said go ahead and file without identifying any problems in it. Well, but so are you saying that because the court allowed you to do it and said there were no problems, that that immunizes you essentially from a 12b-6 motion? No. I don't suggest that at all. Okay. I didn't mean to suggest that. Okay. Defendants then brought a 12b-6 motion, which is their right, although in this case I think a 12e motion might have been more appropriate, but they brought a 12b-6 motion that pointed out what they felt were certain problems with the complaint, and there was an argument over that. And the court ruled, yes, there are problems with this complaint. There are problems that have never been identified before. The plaintiffs have never been given a chance to correct. But the court said because you've previously pleaded in this case a couple of times, I'm not going to give you a chance to amend. But had they been given the opportunity, plaintiffs would have undertaken to correct the problems that the court identified. And then if they were unsuccessful in doing that, the court would be on a solid ground saying you've shown that you can't correct these problems. Plaintiffs have never had a chance to correct the problems that were identified in the motion to dismiss, and that's just the basic problem here. Now, I think after this proceeding, and it goes back for another amended complaint, this Court will be giving guidance as to what has to be and what doesn't have to be in that second amended complaint, and plaintiffs will comply with that. But at this point we don't even reach that because plaintiffs have never had been given any opportunity to correct the problems that are now being appealed before this Court. You have this Aguilar case that, moving on from your first motion, your first issue for just because we do have limited time and there are a couple of things that I want to spend some time on, that based on, let's assume that if you lose on that issue, why wouldn't this be barred under claim preclusion when you consider Aguilar because the rule of reason claims alleged here, why couldn't they have been previously raised under Aguilar and they just weren't? Well, I have to preface this by saying claim preclusion has not been raised previously, and so we don't have any briefing or anything clear on the record to deal with on that. I'm happy to address it, but I have to say that we have not built a record of what was allowed and what could be pleaded in the Aguilar case. But if we come to a federal court in claim preclusion, the issue is going to be whether, under the California rules of claim preclusion, this second complaint would be barred. So you just have issue preclusion? Issue preclusion is the only thing that's been raised so far. Now, under the California rule, it's not a matter of whether there's a nucleus of facts, it's a matter of whether there is the same primary right. The primary right being dealt with in the Aguilar case had to do with consumers and their retail purchases. This case has to do with dealers and their wholesale purchases. And it was just sort of a coincidence that Mr. Gilly happened to wear both hats. He was a retail purchaser, so he was within the Aguilar class, but he was in a different role in the present case. And in this different role in the present case, even though it wasn't the same claim, there was issue preclusion because issue preclusion doesn't depend upon there being the same claim. And so there was issue preclusion, and we've not fought that here on this appeal. But I don't think if we ever had to examine that and we ever built a record on it, that there would be claim preclusion. But at this point, the issue has just not been presented. Well, how do you get to where you are without having conceded that by now? The court ruled that there was a claim preclusion, right? No. No court has ruled this a claim preclusion. The court has ruled it an issue preclusion. No, an issue preclusion. Excuse me. You concede that, that the court is correct on the issue preclusion. We have not challenged that. And can't at this stage or ever. No, I mean, yeah, we have not brought it up on this appeal. Now, I know there's a lot of ways of getting dismissals under Rule 12. But this is a little unusual to, in effect, have summary judgment on any issue and then have the case back in the pleading stage. So your challenge is to plead around what has already been adjudicated. And the court has told you you could do that. That's correct. And the court has given you a chance to do that. Gave us one chance to do that. And then it has said you failed to do that. Failed to do that for reasons that had nothing to do with the previous summary judgment. And you understood the status of the court's ruling, of course, to the extent that it had ruled on the preclusion of certain issues. That's right. Now, it's rather rare that a party is trying to plead a case around what the court has already ruled on the, in effect, as defenses. Right? I can't say how frequently that occurs, but I'm not familiar with it being. Well, you know, it's kind of a challenge to follow where you are procedurally. And the only issue you have in front of us, I take it, is simply the question of whether or not the court abused its discretion in its refusal to allow you to plead one more time in an effort to get into some area of the law where you would have a future absence of claim for collusion. Is that right? Whether the court abused its discretion by not allowing at least one opportunity to correct errors that had not ever been raised before in the case. But you have a different theory, totally, than what the court was about to permit you to do. Because I think the court told you that, in effect, you had to prove that, or you had to plead somehow that each of these separate contracts, standing alone, without regard to any conspiracy that's off the table now, would constitute anti-competitive conduct. Isn't that what? That's right. And that was what plaintiffs intended to do with the First Amendment complaint. But the court has already told you that it will not. Hasn't it already said that it would not allow you to pursue that theory as a matter of substantive law? Hasn't it already ruled on that, in effect? It has told it that plaintiffs will not be allowed to pursue the theory that defendants agreed among themselves to enter into these specific agreements. And we are trying not to believe that. So each agreement has to have, on its own, an anti-competitive effect that has to be alleged with particularity. Right. Or, for example, if one defendant had multiple agreements that, together, for that defendant, created anti-competitive effects, it would also be legitimate to plead that. And the difference between what apparently is needed for the next Amendment complaint and the present one is the present one says that here are the agreements, we identify them, and each of those has anti-competitive effects. Okay. The court apparently wanted, and didn't specify this at all in its ruling, was a list that says, here is Agreement A. Agreement A has anti-competitive effects for the following reasons. Yes. I mean, it's basically an offer of proof. And although I don't think that's required by Rule 8, plaintiffs are perfectly willing to do that. They just weren't given the opportunity to do that. What specific facts would you have alleged if the district court had granted your motion? Well, we would have taken each agreement and said, in this marketplace it is having net anti-competitive effects under the rule of reason that they outweigh any pro-competitive effects. And the other suggestion is that, for example, Paragraph 55 talks about a specific agreement, that is an agreement between Chevron and Tosco that had the effect of taking about 20% of the carb gas out of this limited market and shipping it in the form of conventional gas outside. I would concede that it's not very plain exactly on that paragraph. But that's the type of facts that would be alleged, that this agreement limits the competition in this sub-market for this reason, this agreement does it in this market for this reason. These are things that plaintiffs are willing to plead. And if they find that there's an agreement or group of agreements or even a defendant that they can't make those specific allegations about, they'll drop out. And if they don't drop out, certainly the defendants will be quick to make them drop out. Well, part of the problem you had here was you had the agreements, you had some general market effects, and I think the court said you just didn't have any nexus there. Yeah, once again, the judge said it was not sufficiently particular. You did not draw from that agreement, those exact facts of that agreement, to the exact effects. It alleged the agreements and the effects, but it did not specifically draw the nexus because there was no requirement placed on plaintiffs to do that. That wasn't the suggestion of the court's order. Had the court said it in advance, that's what you've got to have in here, that's what we would have put in. And now the court having said that, we'd be happy to do it. I would like to reserve some time if there aren't any more questions at this point. You may. You have about three minutes. Good morning, Your Honors. I'm Ronald Bredke, appearing on behalf of Defendant Appellee Atlantic Richfield Company and speaking for all the defendant appellees. I guess I'll begin where Mr. Kage sort of began as well, and that's with his charge that if given one opportunity to plead anti-competitive effects from each individual agreement, if they knew that that's the problem, they should be given one opportunity to do that, and they haven't been given an opportunity to do that. We believe that they have already had three opportunities to do that, and it's been very clear that they have been unable to do that, and that's why Judge Moskowitz stated at the end of his decision that based on their failed attempts to do that, he could conclude that they were unable to allege facts sufficient to state a valid Section 1 claim based on the individual exchange agreements. Well, now, we're faced with this, that normally a trial court would have discretion on allowing a party to file an amended complaint. But once the court gets into the substance of what would be acceptable, then this court has to look at whether or not the court is correct on the substance. Does it not? And it's not a matter of discretion anymore. If a trial judge would say in my discretion you've had enough opportunities to state a claim and therefore I'm not going to give you another opportunity, that might be okay. But if the court said you've had lots of opportunities and now you are tendering another complaint and I'm not going to let you do it, and part of the reason I'm not going to let you do it is because it doesn't state a claim, the court is no longer exercising discretion. Now, aren't we at that stage in this case where the court is saying these individual contracts do not constitute anti-competitive conduct and therefore you can't get there from here by pleading? Well, Judge, it's a complicated question because of the posture of this case. It is. To some extent I agree we are where you are, but to some extent we're not. Well, if we are where I think we are, then we have to look at the substance. Do we not? Well, I believe, Your Honor, that the first way I'll tell you you don't have to look at the substance the second you do. All right. The first way is that it was very clear that when Judge Moskowitz granted leave to amend and issued preclusion order, which is not challenged here as they admitted, and therefore that is binding on this court because it hasn't been appealed, he said that they would have to allege anti-competitive effects from the individual exchange agreements. And I think the extent to which he then predicated his March 27 order, which is on appeal here, on their failure to comply with that decision, I believe there is an abuse of discretion standard, and I think cases like the McHenry v. Rennie cases from this court govern that standard. We believe, you know, we actually believe, this is an aside, that in fact even the rule of reason claim based on individual exchange agreements should be barred by issue preclusion and claim preclusion and argue that to Judge Moskowitz based on the Aguilar record, particularly footnote 64 of the court of appeal decision. But Judge Moskowitz didn't agree with us. He said that they could raise this rule of reason claim based on the individual exchange agreements. But so we think if one looks at the failure to comply with the judge's order, which was very clear in what they had to allege, and I think the judge then found in his 2003 order, which is on appeal here, that they did not comply with that order. He said it was clear looking at the amended complaints they filed that they did not try even to allege a complaint, an amended complaint within the scope of his order, that that is a, and your honors, I would ask you if you just compare the allegations that they point to for anti-competitive effects, I think they're at their opening brief pages 20 to 21, and you look at those, you will see they are not alleging anti-competitive effects that could possibly come from a single exchange agreement, but rather require pooling and aggregation of the agreements. So on the basis of this. Is aggregation the same thing as a conspiracy in your view? Is it necessarily the same thing? We believe under the case law that if one is, and actually under the definition of the Sherman Act Section 1, that one has to, if one is trying to pick in a rule of reason case, if one is looking at a particular contract, and the plaintiff is saying that contract violates Section 1 because it's an unreasonable restraint of trade, one has to look at the anti-competitive effects that are directly caused by that agreement and balance that against any pro-competitive effects of that agreement and apply the rule of reason. Obviously in the context of making that balance, one can take into account the market, but one cannot basically point and say this agreement is illegal because. But it's still contextually relevant in your view. It is contextually relevant. We believe that the Fourth Circuit decision in Dixon v. Microsoft and the district court opinion in Paddock Publications are correct, and indeed the California Court of Appeal decision in Aguilar also. What note are you talking about in Aguilar? Footnote 64.  It's the Court of Appeal opinion in Aguilar. Oh, it's the Court of Appeal. You're talking about the immediate, okay. And the Court of Appeal opinion is not citable under the California procedure because the Supreme Court opinion superseded it, but can be cited for racial or collateral stoppage. Okay. I had a question about that. But if I can go back, and so I think it answers Judge Levy's question. I hope I've answered it. To the extent that we're asking for an affirmance based on the failure to comply with the leave to amend order, we think it's an abuse of discretion that one needn't look at the merits. To the extent that one looks at it in terms of whether or not they've gotten over that hurdle, and the question is whether they have adequately alleged anti-competitive effects from the individual agreements, we think that's an issue of Federal pleading law and substantive antitrust law. Let me pose one more question from this perspective. Here the court sits, waiting for somebody to file a complaint, to find the issues and tell the court what it wants decided. Now, when this court got to the point where it was going to allow the plaintiff to file one more complaint, it said what? In effect, here's what I want you to allege. Here's what you get to allege. As opposed to listening to the plaintiff saying, here's what I want to allege, and the court saying, I don't care what you allege. When you get done alleging, I'll rule. Now, that's a little different twist than saying to a party, here's what I want you to litigate, than saying to a party, I'll listen to you tell me what you want to litigate. Maybe you can even file a proposed amended complaint in support of your motion to file it. But has this plaintiff really ever been given an opportunity to amend in a way that would allow that party to say, here is the issue I want this court to decide? Yes, Your Honor. I believe they have, and I believe the chronology. But only once. No, I believe more than once. And I would invite the court to look at the chronology that Mr. Kage laid out. Because essentially, we have to back up to the Aguilar appellate briefing. Sometimes during the Aguilar appellate work, the plaintiffs decided that since they were unable to prove a contract combination or conspiracy in an overarching sense, that they would say, well, we can dispense with that element, because we have the written contracts, that will satisfy that element, and we will allege that they violate the Sherman Act under the rule of reason. That happened in Aguilar. And you can see that phrased through the Court of Appeal and the Supreme Court decision in Aguilar. So when we came in with our motion for summary judgment based upon issue preclusions in this case, as Mr. Kage said, they filed a lodged complaint, which is at the supplemental record 93. And that complaint was their attempt to allege exactly what they say they want to allege now, which is that each individual exchange agreement had anti-competitive effects. And if anyone has any doubt about that, one should review the November 29th transcript of the hearing in front of Judge Moskowitz, which is why we put that into the supplemental excerpts of record. In that hearing, Judge Moskowitz said, here's the way I read the Ninth Circuit cases as to what you have to allege to allege a rule of reason claim based upon the individual agreements. And he essentially said, I don't think the complaint that you've lodged, this first proposed amended complaint, does that. I think all you're doing there is alleging what is barred, I think may be barred by Aguilar. So he gave them, so they had this first post-Supreme Court complaint. He gave them the opportunity to file yet a second proposed complaint, that's at 107 in the excerpt of record. And then he looked at that complaint and he says in his decision on issue preclusion, I don't think this complaint, and this is at page six of that decision, I don't think this complaint alleges anti-competitive effects from the individual exchange agreements. And so he said, but I won't grant the motion to the, I won't dismiss this on summary judgment. I'll give you yet another attempt to try to allege that the individual exchange agreements themselves have anti-competitive effects that make them illegal under the rule of reason. And they filed the complaint, which ultimately dismissed it. Three times these plaintiffs tried to allege a complaint based upon the individual exchange agreements. In one sense, that's correct. But in another sense, they tried only one time after the Court had ruled on summary judgment. Isn't that true? That is certainly true, Your Honor. And so we have only one complaint, that is one amended complaint, filed after the Court ruled on summary judgment. And that, the criticism of that complaint is, I take it, that it didn't quite do what the Court told them to do. Now, that's the box we're in, is it not? And that comes back to my question. The Court did not say to this plaintiff, okay, now you know the status of the case. You know how I've ruled on issue preclusion. Now you figure out how to file a complaint. And once you do, I'll rule on it. Well, I believe that the correct inquiry here ought to be, are there some facts? When the district court made its conclusion that he didn't, based on what had happened before him, he did not believe that they had the ability to elect sufficient facts to state a valid Section 1 claim. That was a decision that was within his discretion or an abuse of his discretion. And I think it is proper to take into account in evaluating that, all three complaints that they filed after the Aguilar Supreme Court, the dialogue that occurred between the Court and counsel at the November 29, 2001 hearing, and the order that the judge issued on May 6, 2002, where he laid out what was wrong with the proposed complaint. They filed them, what they needed to do. It does have a flavor from afar that the district court was deciding merits or thinking about the plausibility of the actual case as distinct from taking the pleadings as pleadings. I know that's not what the court said, but when looking at the dialogue, that was the sense I had of it. And I don't know whether that sense can be translated into anything, but I'd just like your response to that impression. Well, I have. There are several responses, and a lot of it has to do with, I think, the thing that's hanging over this whole hearing, and that is the fact that there is this issue preclusion order that has not been appealed and is binding on everyone here. That's part of it. And so a lot of what Judge Moskowitz was doing was dealing with that. Some of it, though, does have to deal with the nature of the agreements that are being challenged. These gasoline exchange agreements, as the Aguilar Supreme Court says, are longstanding. They're unremarkable, normal, reasonable business transactions that generally, I think everybody agrees, including the complaints, says that they're generally pro-competitive. And so the question is, can the plaintiffs allege facts with regard to any of these 44 agreements to take them out of that kind of general principle? And so there probably was some of that. We all come here. Because you can allege that, and then the question is whether you can prove it. And I had the sense that, to some extent, the court was saying, well, I'm just going to short-circuit all of this because I don't think it can be proved. And I understand that's not what the words on the page say, but that was the feeling I had. No, I think both the words on the page and the sense are that you plaintiffs, if you're going to try to attack a normally pro-competitive agreement, better put into your complaint some facts that explain why these are not pro-competitive here, but indeed are anti-competitive. It's not enough to say they're not pro-competitive, which is the only thing the complaint even tries to do, and that's not enough. Well, was that the court just sort of talking out loud, this is what I'd like to see if you're going to go anywhere in this? And is that one of these instances where maybe courts would be better to, you know, no good deed goes unpunished? I think the court was trying to be very helpful to these plaintiffs to say, if you want to proceed in this case as opposed to trying to file a new complaint, you have a lot of issue preclusion problems, and here's what you have to do to get around those, and here's what you have to do under the Ninth Circuit laws to what a rule of reason claim is. The other things I would say, Your Honor, with regard to leave to amend, we think that the judge acted clearly within his discretion, but we also cannot see how, even if they could possibly allege anti-competitive effects from any of these agreements, this particular plaintiff would have standing to challenge that agreement, because any connection between such an agreement and the price that Mr. Gilly paid for gasoline would be inherently indirect and speculative. For all these reasons, Your Honor, we respectfully request that you affirm the decision below. Thank you, counsel. We'll hear some rebuttal now from Mr. Kagan. I'd like to take a minute, if I might, just to focus right on the question of what the district court required and allowed plaintiffs to do, and contrast it to what they did. In the summary judgment order at the very end of it, the district court said the court grants leave to amend the plaintiff's complaint only to the extent that it alleges that each of the bilateral agreements have unreasonable anti-competitive effects and therefore violate the Sherman Act. That's ER 112 at page 11. The first amended complaint says, at paragraph 58, on information and belief, each of the defendants' exchange agreements listed in Exhibit 1 attached here too, taken as a whole in the context of the market, has the effect of unreasonably restraining trade. You'll find a similar allegation peppered throughout the complaint. Plaintiffs did what they were told to do by the district court. The district court later told them they wanted more particularity and were willing to give them additional particularity, whether or not that's required by Rule 8. The court also said that there was an intent requirement. That's now been wiped out by this court's later decision in Paladin, so that really isn't an issue, although they probably could have alleged that also. Plaintiffs agree? Well, it looks a little bit like the court's trying to help the plaintiffs here and then give clues about what I'd like to see, but then does that mean that the lawyers in filing the amended complaint, I mean, does that abdicate their duty to do what they think would state a cause of action? No, their duty is to try to state a cause of action, and under Rule 8 in Leatherman, I believe they did that. But if the court disagreed, these clues are very obscure in the summary judgment opinion, and I would say they're just not there. The clues are very direct in the order of dismissal. The order of dismissal had said, and you have leave to amend. I don't believe plaintiffs would have taken up the challenge of bringing it up to this court at this point. They would have amended and dealt with those problems. And if they couldn't deal with those problems, then the court would be on solid ground in dismissing them. But again, that's not what happened here. I would take just a few seconds to discuss the issue of what went on in Aguilar, because that seems to have been raised here. I was the Supreme Court counsel in Aguilar, and the issue came up of whether these effects had been pleaded there. And I tried to make the case that if you read the record correctly, maybe they had been alleged in Aguilar, but the Supreme Court found otherwise. And that's where we stand right now. I think it's somewhat ironic defendants say, well, we have issue preclusion because of the decision in Aguilar. And on the point that they won there, and that they argued strongly that effects had not been alleged below and not been adjudicated, they won that. And that's part of the record here, too. That carries over from Aguilar as well. So again, I'm not saying that the complaint is perfect. I'm not saying the complaint can't be improved. But I'm saying the plaintiffs were not given the opportunity to address mistakes or problems that were pointed out to them after the fact, and they should be given the opportunity to do that. For that reason, there should be reversal. Thank you, counsel. The case just earlier submitted, we appreciate the arguments from both of you. And final case on this morning, we have one case that we've deferred submission in. That's Durante v. Qualcomm. So that brings us to our final morning case, which is Edwards v. City of National City.
judges: Leavy, Graber, Callahan